**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **KYLE BOSARGE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO.:  18-CV-00240-N** |
| | ) | |
| **MOBILE AREA WATER AND SEWER** | ) | |
| **SERVICE, SHARON KING, In Her** | ) | |
| **Individual and Official Capacity as the Human** | ) | |
| **Resource Director, and FATIMA** | ) | |
| **WASHINGTON, In Her Individual and Official** | ) | |
| **Capacity as Assistant Human Resource Officer,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### FIRST AMENDED COMPLAINT AND JURY DEMAND

---

Plaintiffs files his First Amended Complaint and Jury Demand against the Mobile Area

Water and Sewer Service, (hereinafter "MAWSS") a governmental entity organized and existing in

Mobile, Alabama; Sharon King, (hereinafter "King"), individually and in her official capacity as the

Human Resource Director of MAWSS, and Fatima Washington (hereinafter "Washington"),

individually and in her official capacity as Human Resource Officer, (MAWSS, King, and

Washington are collectively referred to herein as "Defendants"), for declaratory, equitable and

injunctive relief, compensatory damages and back pay from Defendants arising from Defendants

1

violation of rights guaranteed to Plaintiffs under Title I of the Americans with Disability Act, 42

U.S.C. Section 12101, et seq., Section 504 of the Rehabilitation Act, and the First and Fourteenth

Amendments to the United States Constitution, 42 U.S.C. Section 1983.

## JURISDICTION

1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331,

1343(4), 2201, 2202, and 42 U.S.C. Section 1983.

2.     Jurisdiction to grant injunctive and declaratory equitable relief as well as damages

is invoked pursuant to 42 U.S.C. §1983 and 42 U.S.C. Section 12101, et seq.

## VENUE

3.     Venue is proper in the Southern District of Alabama, Southern Division, since

Defendants conduct business within this District and Division and this is where acts of

discrimination occurred.

## PARTIES

4.     Plaintiff , Kyle Bosarge (hereinafter "Plaintiff"), is over the age of nineteen years and

a resident citizen of Mobile, Mobile County, Alabama.  At all times relevant to this action Bosarge

was employed by the Mobile Area Water and Sewer Service.

5.     Defendant,  Mobile Area Water and Sewer Service ("MAWSS"),  is a public entity

and employer in accordance with 42 U.S.C. § 12111(5) and 42 U.S.C. § 12131(1) doing business

in Mobile, Mobile County, Alabama.  Defendant is engaged in an industry affecting commerce and

is a program receiving state and/or federal financial assistance pursuant to §504 and is thus a

program or activity receiving federal financial assistance and funding in accordance with 29 U.S.C.

794.

2

6.      Defendant, King, is over the age of nineteen (19) years of age and is a resident of Mobile County, Alabama.  King is the Human Resource Director at MAWSS and is sued in her official and individual capacities.

7.      Defendant, Washington, is over the age of nineteen (19) years of age and is a resident of Mobile County, Alabama.  Washington is the Assistant Human Resource Director for MAWSS and is sued in her official and individual capacities.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      Prior to filing this civil action, Plaintiff timely filed written charges asserting discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").

9.      On or about March 9, 2018, the EEOC issued Plaintiff a Notice of Right to Sue which is attached hereto as Exhibit "A".

10.     Plaintiff exhausted and satisfied all administrative remedies and pre-requisites to filing this action.

## FACTUAL ALLEGATIONS

11.     MAWSS has received state and/or federal financial assistance and funding which was utilized in the maintenance and operation of the water treatment and sewage facility.  This financial assistance continues and was received during times of Plaintiff's employment including during relevant times stated herein.

12.     King, as the Human Resources Officer, was responsible for supervising and assisting other management staff with the daily supervision of department activities including, but not limited, enforcing and implementing EEO policies, investigations, training of employees, and/or discipline.

13.     Washington, as the Assistant Human Resources Officer was responsible for assisting

3

King and other management staff with the daily supervision of department activities including, but not limited, enforcing and implementing EEO and other MAWSS policies, investigations, training of employees and staff, and/or discipline.

14.     Defendants King and Washington, performed essential functions that required them to be familiar with EEO policies and laws that affected their employees including, but not limited to the application and implementation of medical inquires, FMLA, and the ADA.

15.     Defendants failed to provide adequate and proper training of EEO policies and laws, including laws affecting the ADA and FMLA, to management staff.

16.     Defendants failure to provide appropriate training to Defendants King and Washington, as well as other management. created an obvious risk that violations of federally protected was likely to occur and amounted to deliberate indifference to the Plaintiff's federally protected rights.

17.     On or about June, 2013, Plaintiff was hired by MAWSS as an Auto Service Worker I.  Plaintiff was promoted to the position of Auto Service Worker II in July, 2014, and at all times relevant to this complaint was classified in said position.  Plaintiff was assigned to work at the Garage and was under the direct supervision of Charles Sumrall ("Sumrall"), the Garage Supervisor. Plaintiff was primarily assigned to maintain and repair large engines and vehicles owned and operated by MAWSS.

18.     At all times relevant, Plaintiff was qualified to perform the duties of an Auto Services Worker II and satisfactorily performed his duties.

19.     King, Human Resource Director, and Washington, Assistant Human Resource Officer, worked in the Human Resource Department at MAWSS and were charged with the

responsibility of managing and supervising the employees of MAWSS.

20.     On or about October 10, 2015, Plaintiff requested leave under the Family Medical Leave Act ("FMLA") because of a serious medical issue. Defendants were informed, for the first time, that Plaintiff suffered from a chronic, medical illness.

21.     On October 28, 2015, Plaintiff's treating physician, Dr. Terry Millette (hereinafter "Dr. Millette") provided to Defendants documentation related to Plaintiff's requested medical leave and noted Plaintiff's condition, treatment dates, and current medications, pursuant to MAWSS's request. Dr. Millette made no recommendations or requests that Defendants provide to Plaintiff any accommodations in the workplace as they were contra indicated.

22.     Plaintiff was an eligible employee for protection under FMLA because he had been employed for at least twelve (12) months and had worked at least 1,250 hours during the 12-month period immediately preceding the start of his requested leave.

23.     MAWSS granted Plaintiff's requested medical leave.

24.     Plaintiff was released by his treating physician to return to full duty with no medical restrictions.

25.     Plaintiff returned to work at MAWSS full time and was allowed to resume all duties of his position without the imposition of any restrictions by Defendants until August 9, 2016.

26.     On or about May 2, 2016, Plaintiff applied for the open position of Vehicular Equipment Mechanic (hereinafter "Mechanic") with the Mobile County Personnel Board. Plaintiff was notified by HR and the Mobile County Personnel Board that he was not certified as a qualified applicant because of omissions on his application regarding his experience as a mechanic prior to his employment with MAWSS.

27.     Plaintiff was the only applicant who applied for the May Mechanic posting and the posting was withdrawn by MAWSS.  It was resubmitted and reposted in June, 2016.

28.     On or about June 15, 2016, Defendants demanded that Plaintiff execute a medical release in favor of Defendants to allow Defendants access and review of Plaintiff's medical records, medical history, and treatment.

29.     On or about June 16, 2016, Defendants reopened the Mechanic Position at MAWSS and posted the opening from June 16, 2016, through June 29, 2016.

30.     Plaintiff resubmitted his application to the Mobile County Personnel Board for the reposted position of  Mechanic at MAWSS.

31.     Plaintiff met all the qualifications and posting requirements of the Mechanic position and posting, and was certified by the Mobile County Personnel Department as a qualified applicant for the position.  Upon Information and Belief, Plaintiff was the only qualified applicant who applied for the position under consideration by MAWSS.

32.     King and Washington "decided that it wasn't safe for [Plaintiff] to drive anymore based on what was put on [Plaintiff's] FMLA paperwork" and they, as Human Resource Officer, made the decision that he was not qualified for the Mechanic position.

33.     On June 22, 2016, Defendants requested information regarding Plaintiff's medical condition from Dr. Millette including, but not limited to, symptoms of Plaintiff's medical condition, medications prescribed to Plaintiff, and Plaintiff's need for medical accommodations in the workplace pursuant to an FMLA leave request submitted to MAWSS in October of 2015.

34.     On or about July 5, 2016, Plaintiff inquired with his direct supervisor, Charles Sumrall,  Garage Supervisor  (hereinafter "Sumrall"), regarding his current application for the

6

Mechanic opening.  Sumrall advised Plaintiff that Defendants Washington and King determined he was "not qualified" for the position.   Sumrall recommended that Plaintiff speak with King, Human Resource Director.

35.    Plaintiff inquired about the Mechanic posting and his application with Defendants King and Washington, Human Resource Officers.  King informed Plaintiff he was not considered by MAWSS  for the Mechanic position because he was not qualified "because [he had] conditions."

36.    Plaintiff advised King, Human Resource Director, Washington, Assistant Human Resource Officer, and Sumrall, Garage Supervisor, that Defendants arbitrary disqualification and non-selection of him for the Mechanic position due to his medical condition and disability was discriminatory and unlawful.

37.    MAWSS failed and/or refused to accept Plaintiff's application or to consider Plaintiff for the Mechanic posting and position because of Plaintiff's disability and medical condition.

38.    On or about August 1, 2016, Defendants requested additional medical information pursuant to Plaintiff's October 2015 FMLA leave request from Dr. Millette regarding Plaintiff's medical condition and treatment.   Dr. Millett responded to Defendants'  inquiries regarding Plaintiff's medical condition and reiterated that Plaintiff required occasional breaks and suffered from  "Heat Intolerance Only."

39.    On or about August 9, 2016, Sumrall advised Plaintiff that Defendants were to impose driving restrictions on Plaintiff which would prevented him from driving and/or operating any MAWSS owned vehicle.  Plaintiff was not limited or restricted by his treating physician to operate a vehicle or equipment and, again, expressed concerns of discrimination to his supervisor, Sumrall. Sumrall reported Plaintiffs complaints of discrimination to King and Washington.

40.     On August 12, 2016, Plaintiff, pursuant to the demands of King and Washington, provided Defendants with a return to work release from his treating physician, Dr. Millette, opining that Plaintiff suffered from "heat intolerance only." Dr. Millette released Plaintiff to perform all duties of the position of Auto Service Worker II including driving.

41.     Defendants failed and/or refused to acknowledge and/or accept the recommendations and medical certification and opinions of Plaintiff's treating physician. Plaintiff, again, complained to King and Washington that Defendants actions were discriminatory.

42.     On August 12, 2016, Plaintiff, again, inquired with his direct supervisor, Sumrall, regarding the imposition of driving restrictions by Defendants and, again, complained of discrimination. Upon information and belief, Sumrall reported to King and Washington his receipt of discrimination complaints from Plaintiff.

43.     Defendants failed and/or refused to investigate Plaintiff's complaints of discrimination and/or to take corrective action.

44.     Defendants failed and/or refused to provide any explanations to Plaintiff as to Defendants' failure to address Plaintiff's concerns of harassment and discrimination and/or to provide any documentation to substantiate Defendants' decision to implement restrictions.

45.     On August 15, 2016, Defendants again requested medical documentation and information from Dr. Millette and provided to Dr. Millette a copy of Plaintiff's job description and duties. Dr. Millette reviewed Defendant MAWSS job description related to Plaintiff's job duties and, after review, again confirmed Plaintiff required no accommodations other than occasional breaks and noted Plaintiff suffered from "Heat Intolerance Only."

46.     Defendants obtained and, upon information and belief, reviewed copies of Plaintiffs

8

medical records as part of their medical inquiry regarding Plaintiff's medical history and treatment.

47.     Neither Plaintiff nor his physician made any formal requests for accommodations in the workplace to Defendants as accommodations were contra indicated.

48.     Plaintiff's medical condition in no way affected Plaintiff's ability to perform his assigned duties including, but not limited to, operating a vehicle or other equipment.

49.     Dr. Millette never issued any medical restriction on Plaintiff which prevented him from operating a vehicle or performing duties required of an Auto Service Worker II and/or Mechanic including, but not limited to, driving and/or operating equipment.

50.     The driving restrictions implemented by Defendants had no relation to Plaintiff's medical condition or disability and evidence a prejudice and/or bias of Plaintiff's disability and/or condition. The restrictions imposed upon Plaintiff by Defendants were, further, without any medical authority and/or based upon an individual assessment of Plaintiff.

51.     Defendants King and Washington were not qualified to make medical judgements regarding Plaintiff's medical condition and/or to impose medical restrictions upon Plaintiff.

52.     Defendants' imposition of restrictions on Plaintiff interfered with Plaintiff's ability to perform his assigned duties and/or made the performance of his duties substantially more difficult.

53.     On August 19, 2016, Washington, Assistant Human Resource Officer, provided Plaintiff a letter confirming MAWSS' imposed restrictions on Plaintiff related to driving a vehicle. Defendants provided Plaintiff a form to request future accommodations if any were required in the workplace. Plaintiff made no such accommodation requests since no accommodations were required by Plaintiff to perform the duties of Auto Service Worker II.

54.     Defendants continued to ignore Plaintiff's medical release and/or to accept the

recommendations of Plaintiff's treating physician.

55.     On August 22, 2016, Plaintiff requested Defendants to provide him with any medical documentation that indicated that he was unable to operate and/or drive a vehicle. Defendants failed to seek clarification from Plaintiff's treating physician regarding Plaintiff's ability to drive a vehicle and/or to provide to Plaintiff any documentation which would support their arbitrary imposition of driving restrictions upon Plaintiff.

56.     On or about September, 2016, Plaintiff filed a formal complaint of discrimination with King, Human Resource Director, regarding concerns of ADA violations.

57.     Around the end of September, Sumrall reported to Washington that Plaintiff "was going to sue MAWSS for discrimination."

58.     On October 20, 2016, Defendants again sought medical information and documentation from Dr. Millette. Dr. Millette, again, confirmed that Plaintiff suffered from "no neurological deficits and has no restrictions from his job duties or driving."

59.     On November 10, 2016, Norman Rollo, Supervisor II, (hereinafter "Rollo") directed Plaintiff to repair a headliner on his personal truck. Plaintiff received no compensation for the work and performed the repairs pursuant to the customs and practices at the MAWSS Garage facility and directions of a MAWSS supervisor.

60.     Plaintiff's supervisor, Sumrall, was aware of the repairs being conducted for Rollo by Plaintiff and did not address any concerns of inappropriate conduct and/or violations of policies and procedures with Plaintiff until January 25, 2017.

61.     On November 11, 2016, an employee, Tim, was caught on video taking a windshield wiper from the garage.

10

62.     Upon information and belief, King and/or Washington reviewed the video of the alleged theft by Tim on or about November 11, 2018, including a review of Plaintiff's actions during the incident in question.

63.     Tim was immediately placed on administrative leave as a result of allegations of theft of property from the garage and given a notice of proposed termination from King.

64.     Tim was allowed to resign in lieu of termination on November 13, 2017.

65.     During Washington and King's investigation of the alleged theft, Tim did not implicate that Plaintiff or any other employee had assisted and/or participated in any manner in the incident.

66.     Plaintiff was not questioned and/or addressed, in any manner, regarding the alleged theft on November 11, 2016, until January 25, 2017, when he was proposed for disciplinary action for his alleged participation in the incident.

67.     Upon information and belief, Washington and King, as Human Resource Officers, initiated an investigation at the Garage after the November 11, 2018 theft "to see what was going on." at the garage.  The Investigator reported "no theft" at the Garage, but he did "find other things" in his report.

68.     On or about January 25, 2017, Plaintiff was issued a Pre-Disciplinary Action Notice for conduct that allegedly occurred on or about November 10 and 11, 2016.  Plaintiff was proposed for a 15 day suspension without pay for the alleged conduct.

69.     Upon information and belief, Washington and King participated and made the recommendation to discipline Plaintiff for the alleged conduct on November 10, 2016, and November 11, 2017.

11

70.     King, Human Resource Officer, Washington, Assistant Human Resource Officer, and Sumrall, Garage Supervisor, were aware of the actions of Plaintiff on November 10 and 11, 2016, because they had reviewed the videos at the time of the alleged incidents.

71.     Plaintiff received no communications and/or reprimands or notice from Defendants prior to January 25, 2017, that addressed concerns that Plaintiff had violated policies and procedures as alleged in the Pre-Disciplinary Notice dated January 25, 2017.

72.     Plaintiff was treated differently than other similarly situated employees who received no discipline for the same or similar conduct including, but not limited to Rollo, Supervisor II, and Jason Simon.

73.     Plaintiff addressed concerns regarding discrimination, retaliation, and disparate treatment related to the January 25, 2017, reprimand to Garage Supervisor, Sumrall.  Plaintiff also addressed concerns of discrimination with other supervisors including, but not limited to Rollo, Supervisor II, and Benjamin Hurn, Supervisor I.

74.     On February 6, 2017, Bosarge filed with the Equal Employment Opportunity Commission (EEOC) a Charge of Discrimination against MAWSS.  Defendants were provided notice of said EEOC Charge filing by Plaintiff on February 6, 2017.

75.     On February 9, 2017, Defendants held a pre-disciplinary hearing in which Plaintiff relayed concerns that Defendants proposed disciplinary action and reprimand of Plaintiff was retaliatory and discriminatory. Plaintiff addressed concerns of disparate treatment and questioned the lack of discipline to Rollo, Supervisor II, who  directed him to perform the work which was the subject of the discipline.  Plaintiff asserted the disparate treatment was evidence of pretext for the proposed discipline.

76.     On or about February 11, 2017, Rollo, Supervisor II, was noticed for proposed Pre-disciplinary action for directing Plaintiff to perform repairs to his personal vehicle on November 10, 2016.  Rollo asserted the delayed discipline was a coverup for the discrimination of Plaintiff and further opined Plaintiff was the victim of discrimination and retaliation by Defendants.

77.     Rollo asserted that he was retaliated against as a result of his complaints of discrimination and affirmative support of Plaintiff in furtherance of his discrimination and retaliation claims.

78.     Rollo filed an administrative action contesting the proposed discipline and, further, asserting the disciplinary action against him was discriminatory.

79.     Plaintiff testified in furtherance of Rollo's complaints of discrimination before the Mobile County Personnel Board on behalf of Rollo and asserted that King and Washington had engaged in a pattern of discriminatory conduct.

80.      On February 16, 2017, Defendant MAWSS noticed a 15 day suspension against Plaintiff, without pay, for the November, 2016, incidents.   Plaintiff, again, complained of discrimination and retaliation.

81.     Plaintiff appealed the 15 day suspension to the Mobile County Personnel Board on February 21, 2017, pursuant to the policies and procedures of MAWSS.  Plaintiff, again, complained that the issued discipline of him by Defendants was discriminatory and retaliatory for his complaints of discrimination.

82.     On September 19, 2017, a hearing was held before the Mobile County Personnel Board regarding Plaintiff's suspension.  The Personnel Board failed and/or refused to address Plaintiff's concerns of discrimination and retaliation asserting it lacked jurisdiction.

13

83.     The Personnel Board upheld Plaintiff's 15 day suspension by MAWSS.  Plaintiff was suspended from February 20, 2017 through March 10, 2017 and received no pay during the suspension period.

84.     On or about March 13, 2017, the day Plaintiff returned from suspension.  Sumrall notified Plaintiff that his duties had been restructured because of the imposed driving restrictions. Defendants removed Plaintiff's  assignments related to large engine maintenance and repairs and reassigned him to service and repair small engines and equipment only.

85.     Defendants actions in reassignment Plaintiff's duties and assignments placed Plaintiff in a false light regarding his employment status and detrimentally affected the terms and conditions of his relationship with co-workers and his reputation in the community.

86.     The substantial changes in Plaintiff's duties required substantially less skill, experience, training, and expertise resulting in a constructive discharge.

87.     Upon information and belief, King and Washington, in the positions as Human Resource Officers, initiated supervised, and/or implemented the reassignment of Plaintiff's duties.

88.     The harassment of Plaintiff by Defendants became more severe and pervasive and interfered with Plaintiff's ability to perform his duties as an Auto Service Worker II.  Plaintiff has received poor evaluations, been issued frivolous reprimands, has been scrutinized, isolated, and has had other adverse actions that interfere with his ability to perform his assigned job duties.

89.     The adverse actions taken against Plaintiff reasonably deterred Plaintiff, as well as other employees, from exercising his First Amendment Rights and from engaging in protected conduct.

90.      Plaintiff has a medical condition and impairment that has substantially limited major

14

life activities.  Despite his disability, Plaintiff has satisfactorily performed the essential functions of the position of Auto Service Worker II either with or without restrictions.

91.     Defendants failed and/or refused to return Plaintiff to his work and/or duties.

92.     Defendants failed to make an individual assessment of Plaintiff's abilities and, instead, relied on personal bias and their general understandings and perceptions regarding his condition.

93.     Plaintiff is a qualified individual with a disability under the Americans with Disability Act (ADA) in that he can perform the essential function of the position of Auto Service Worker II and/or Vehicular Equipment Mechanic either with or without accommodation.

94.     The work restrictions implemented by the Department have no relation to Plaintiff's medical condition or disability and evidence a prejudice and/or bias of his disability and/or condition.

95.     Plaintiff has a history and record of disability, which was known by Defendant.

96.     Defendant perceived and/or regarded Plaintiff as disabled.

97.     In denying the Plaintiff employment and/or reasonable accommodations related thereto, Defendants intentionally, willfully, and maliciously discriminated against Plaintiff on the basis of his disability, his record of disability, and/or his perceived disability in complete disregard for his federally protected rights.

98.     Plaintiff was discriminated against because of his disability, his record of disability, and/or his perceived disability, and in retaliation for asking for accommodations in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

99.     On or about February 6, 2017, Plaintiff filed a Charge of Discrimination with the

Equal Employment Opportunity Commission asserting violations of the ADA.  Defendants were provided notice of said filing and charge related to the suspension and additional acts of retaliation.

100.    Plaintiff was discriminated against in the terms and conditions of his employment with MAWSS as a result of his disability in violation of the Americans with Disability Act and Section 504 of the Rehabilitation Act.

101.    Plaintiff was subjected to a hostile environment and retaliatory environment as a result of discrimination complaints asserted in violation of the ADA.

102.    Plaintiff complained of the discriminatory actions of Defendant.

103.    Defendants failed to investigate and/or  take appropriate and corrective action to correct the discriminatory conduct in the workplace.

104.    No action was taken by the Department to stop the harassment or to create an environment that was not hostile and/or discriminatory including, but not limited to, forced reassignments, reprimands,  poor evaluations, isolation, job scrutiny, and other hostile acts against him.

105.    Defendants have made numerous requests, inquiries, and demands for information and documentation regarding Plaintiff's medical condition and treatment which were not necessary and/or related to business necessity.

106.    Plaintiff complained of the discriminatory actions of Defendant.

107.    Defendants failed to investigate and/or take appropriate and corrective action to correct the discriminatory conduct in the workplace.

108.    As a proximate consequence of the actions of Defendants, Plaintiff was caused to suffer damages, including back wages, pain and suffering, and emotional distress.

16

109.    MAWSS ratified the unlawful conduct of King and Washington by failing to take appropriate and corrective action after having received notice thereof.

110.    As a result of the Defendants conduct, Plaintiff has been caused to suffer loss of employment, underemployment, and a loss of standing and reputation in the community.

111.    As a result of Defendant's conduct, Plaintiff has been caused to suffer a loss of income and benefits as well as frustration, anxiety, anger, emotional distress and other compensatory damages.

112.    Department's conduct was done with reckless indifference to the Plaintiffs' federally protected rights.

## COUNT I - Interference Claim
## ADAA and Section 504 of the Rehabilitation Act

Plaintiff asserts this claim against Defendants, MAWSS and King and Washington, in their official capacities as Human Resource Officers.

113.    Plaintiff avers and incorporates herein each of the foregoing paragraphs as if full set forth herein.

114.    Plaintiff is a person with a disability, has a history of disability, and/or is regarded as disabled pursuant to 42 U.S.C. § 12102.

115.    Defendant is an employer in accordance with 42 U.S.C. § 12111(5).  Defendant is a public entity in accordance with 42 U.S.C. § 12131(1).  Defendant, receives federal financial assistance pursuant to §504 and is thus a program or activity receiving Federal financial assistance in accordance with 29 U.S.C. 794.

116.    The Defendants have received Federal Financial assistance and funding which were

17

utilized in the maintenance and operation of the Utility system. This financial assistance continues and was received during times of Plaintiff's employment including during relevant times stated herein.

117.    Plaintiff is capable, despite his disability, of performing the essential functions of his position either with or without reasonable accommodations and is a "qualified individual with a disability" pursuant to 42 U.S.C. § 12111 and 42 U.S.C. 12131(2).

118.    The Defendants are a covered entity and an employer pursuant to the Act, 42 U.S.C. Section 12111.

119.    Plaintiff has never been provided any specific restrictions regarding his work duties and has been cleared to perform all duties, including operating a vehicle, by his treating physician.

120.    Defendants made medical inquiries and perceived judgements regarding Plaintiff's medical condition.

121.    Defendants imposed driving restrictions on Plaintiff because of their personal bias and perceptions regarding Plaintiff's medical condition. Plaintiff has no medical restrictions which would restrict or prevent him from operating a vehicle or equipment.

122.    Plaintiff was reassigned to work on small engines and is currently performing the duties of a small engine repair mechanic due to the restrictions imposed upon him by Defendants and due to Defendants's personal biases and perceptions regarding his medical condition.

123.    The restrictions placed upon Defendant have no medical basis and/or authority.

124.    Defendants interfered with Plaintiff's rights under the Americans with Disabilities Act pursuant to Section 503(b) (42 U.S.C. §12203(a)) and Section 504 of the Rehabilitation Act

125.    Defendants questioned Plaintiff's ability to perform the essential functions of his

position as a Auto Service Work II and rejected him as a candidate for the position of Mechanic based upon perceived judgments and biases regarding his medical condition.

126.    Defendants removed essential duties of Plaintiff and transferred him to another position requiring substantially less skill, education, and training resulting in a constructive discharge.

127.    Defendant's actions were done with malice or reckless indifference to the federally protected rights of Plaintiff.

128.    As a result of the Defendant's acts or inaction, Plaintiff has suffered loss of employment and income, underemployment, lost wages, frustration, anxiety, emotional distress, and other compensatory damages.

129.    As the direct and proximate result of Department's wrongful actions, the Plaintiff was caused to suffer mental anguish, loss of dignity, embarrassment, humiliation, and other intangible injuries and other directly and indirectly related expenses.  These injuries are continuing and Plaintiffs will continue to suffer such injuries in the future.

130.    Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and is required to pay their attorneys reasonable attorneys' fees for the services rendered in this cause.

## COUNT II - Retaliation
### ADA and Section 504 of the Rehabilitation Act

Plaintiff asserts this claim against Defendants, MAWSS and Washington and King, in their official capacities as Human Resource Officers.

131.    Plaintiff re-avers and re-alleges the foregoing paragraphs as though fully set out

herein.

132.    Plaintiff raised issues and concerns regarding concerns of discriminatory practices engaged in by Defendants and openly opposed perceived discriminatory actions by Defendants including concerns of retaliation for said conduct.

133.    As a direct result of Plaintiffs complaints, Defendants retaliated against him for his open opposition and expression of concerns regarding possible discriminatory practices by Defendants.

134.    As a direct result of Plaintiffs complaints, Department restructured Plaintiffs' job duties and assignments, removed critical assignments, reassigned Plaintiff to new duties which required substantially less education, skill and responsibility, reprimanded and suspended Plaintiff, gave Plaintiff poor evaluations, scrutinized and isolated Plaintiff from other employees and took other actions which interfered with Plaintiff's ability to perform his duties.

135.    Defendants retaliated against Plaintiff for his exercise of federally protected rights in violation of the ADA and Section 504 of the Rehabilitation Act, by instituting and conducting a systematic pattern and practice of discrimination and retaliation in an effort to create a hostile working environment.

136.    Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and is required to pay their attorneys reasonable attorneys' fees for the services rendered in this cause.

<u>**COUNT III - Retaliatory Hostile Work Environment**</u>
<u>**ADA and Section 504 of the Rehabilitation Act**</u>

Plaintiff asserts this claim against Defendants, MAWSS and King and Washington, in their

official capacities.

137.    Plaintiff avers and incorporate herein each of the foregoing paragraphs as if fully set forth herein.

138.    Plaintiffs were subjected to a retaliatory and hostile, offensive, and abusive working environment as a result of his complaints of discrimination.

139.    Based upon the pervasive nature of the hostile environment, Defendants knew or should have known of the hostile work environment.

140.    Plaintiff found the harassment to be humiliating, offensive, unfair and in violation of his rights under the ADA.

141.    Defendants received information regarding the retaliatory and hostile working environment and failed to take prompt, effective, remedial action upon receipt of notice of the hostile working environment.

142.    Plaintiff has suffered compensatory damages and lost wages as a result of the harassment against Plaintiff.

143.    Plaintiff has suffered frustration, anxiety, humiliation and emotional distress as a result of the harassment against Plaintiff.

144.    Defendants knew or should have known that their conduct violated clearly established Federal law.

145.    The Defendants' conduct was done with reckless indifference to the Plaintiff's federally protected rights and Defendants failed to make good faith efforts to comply with the ADA.

146.    Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and is required to pay their attorneys reasonable attorneys' fees

for the services rendered in this cause.

## COUNT IV - Failure to Promote
## ADA and Section 504 of the Rehabilitation Act

Plaintiff asserts this claim against Defendants, MAWSS and King and Washington, in their official capacities.

147.    Plaintiff reavers and realleges the foregoing paragraphs as though fully set forth herein.

148.    Plaintiff was denied a promotion because of his medical condition and/or disability in violation of the ADA.

149.    The substantially motivating factor for the denial of Plaintiff's promotion request was his disability and/or medical condition.

150.    As a result of the Defendant's discriminatory actions, the Plaintiff has suffered extreme harm including, but not limited to, mental anguish, emotional distress, emotional suffering, and lost wages.

151.    Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and is required to pay their attorneys reasonable attorneys' fees for the services rendered in this cause.

## COUNT V - Constructive Demotion and/or forced reassignment
## ADA and Section 504 of the Rehabilitation Act

Plaintiff asserts this claim against Defendants, MAWSS and King and Washington, in their official capacities.

152.    Plaintiff avers and incorporates herein each of the foregoing paragraphs as if full set forth herein.

153.    Plaintiff raised issues and concerns regarding concerns of discriminatory practices engaged in by Defendants and openly opposed perceived discriminatory actions by Defendants including concerns of retaliation for said conduct.

154.    As a direct result of Plaintiff's disability and complaints, Defendants retaliated against Plaintiff for his open opposition and expression of concerns regarding possible discriminatory practices by Defendants.

155.    As a direct result of Plaintiff's disability and complaints, Defendants restructured Plaintiffs' job duties and assignments and removed critical assignments to Plaintiffs classifications which required substantially less education, skill and responsibility.

156.    The adverse actions taken by Defendants was hostile and retaliatory and was tantamount to a demotion.

157.    Defendants retaliated against Plaintiff for his exercise of federally protected rights in violation of the ADA by instituting and conducting a systematic pattern and practice of discrimination and retaliation in an effort to create a hostile working environment and resulting in Plaintiff's forced reassignment and/or demotion.

158.    As the direct and proximate result of Defendants' wrongful actions, the Plaintiff was caused to suffer loss of employment, underemployment, loss of income, mental anguish, frustration, anxiety, loss of dignity, embarrassment, humiliation, and other intangible injuries and other directly and indirectly related expenses.  These injuries are continuing and Plaintiff will continue to suffer such injuries in the future.

159.    Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce his rights under the AAA and is required to pay his attorneys reasonable attorneys' fees for

23

the services rendered in this cause.

## COUNT VI - ADA to Unauthorized Medical Inquiry

Plaintiff asserts this claim against Defendants, MAWSS and King and Washington, in their official capacities only.

160.    Plaintiffs aver and incorporate herein each of the foregoing paragraphs as if full set forth herein.

161.    Plaintiff notified Defendants of a serious medical condition and provided to Defendants documentation regarding his restrictions.

162.    Defendants made numerous unlawful inquiries with Plaintiff and his treating physician regarding Plaintiff's medical condition, treatment,  and disability and/or the nature or severity of Plaintiff's  disability.

163.    Defendants demanded that Plaintiff execute a release of his medical records and received and examined Plaintiff's medical history and treatment.

164.    Defendants' inquiries into Plaintiff's medical records was much more extensive and more intrusive than necessary to determine the amount of leave Plaintiff required, when Plaintiff would return to work, and/or if the leave was medically necessary.

165.    The medical inquiries made by Defendants were not job related or consistent with business necessity.

166.    Department's actions were done with malice or reckless indifference to the federally protected rights of Plaintiff.

167.    Department has interfered with Plaintiff's rights under the Americans with Disabilities Act pursuant to Section 42 U.S.C. Section 12112 (d)(4)(A).

24

168.    The actions of Defendants caused Plaintiff distress, humiliation, embarrassment, and shame.

169.    Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce his rights under the ADAA and is required to pay his attorneys reasonable attorneys' fees for the services rendered in this cause.

### COUNT VII - Violation of §1983 First Amendment

Plaintiff asserts this claim against Defendants, MAWSS, King in her individual and official capacity and the Human Resource Director, and Washington in her official and individual capacities as the Assistant Human Resource Officer.

170.    Plaintiff realleges and adopts all allegations contained in the foregoing paragraphs as if fully set out herein.

171.    In violation of 42 U.S.C. §1983, Defendants discriminated and retaliated against Plaintiff because Plaintiff he reported discriminatory conduct and opposed discriminatory practices made unlawful under Federal Law.

172.    The actions and conduct of Plaintiff in reporting discrimination in the workplace was a matter of public concern.

173.    Defendants retaliated against Plaintiff for his protected conduct including, but not limited to, constructively demoting Plaintiff and  reassigning Plaintiff's duties, unfair evaluations, frivolous reprimands, scrutiny of his work, isolation from other employees, and denial of employment opportunities in retaliation for his legitimate exercise of his rights to free speech and free association as described above.

174.    Defendants deprived Plaintiff of his freedom of speech and of association as

guaranteed by the First Amendment of the United States Constitution and the Civil Rights Act, and enforced through 42 U.S.C. § 1983.

175.    In their actions towards Plaintiff as described above, Defendants King and Washington acted willfully, intentionally, and/or with callous or reckless indifference to Plaintiff's rights under the First Amendment to the United Stated Constitution.

176.    Reasonable public officials knew or should have known that their actions violated clearly established law.

177.    As a result of Defendant's adverse acts against Plaintiff in retaliation for his exercise of his rights to free speech, Plaintiff has suffered loss of income, loss of promotional opportunities, loss of training, severe humiliation, mental distress, and emotional suffering.

178.    Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce his rights and is required to pay his attorneys reasonable attorneys' fees for the services rendered in this cause.

## COUNT VIII - Failure to Supervise and Train
## Violation of 1983 Fourteenth Amendment

Plaintiff asserts this claim against Defendants MAWSS, and King and Washington in their individual and official capacities as Human Resource Officers.

179.    Plaintiff reavers and realleges the foregoing paragraphs as if fully set forth herein.

180.    Defendants MAWSS, King, and Washington were charged with the management and supervision of employees at MAWSS including the supervision of the Garage and it's employees.

181.    Defendants MAWSS, King and Washington were responsible for implementing and enforcing EEO policies of the company including, but not limited to, policies related to the

26

Americans with Disability Act.

182.    Defendants MAWSS, King and Washington had an affirmative duty to train employees, including appropriate training for Human Resource officers, regarding EEO policies to prevent discrimination and retaliation in the workplace.

183.    Defendants King and Washington, as Human Resource Officers, had an affirmative duty to investigate complaints of discrimination and take corrective action to prevent discriminatory conduct in the workplace in accordance with MAWSS policies and federal and state laws.

184.    Defendants were aware of a history of wide spread abuse regarding MAWSS' policies and procedures relating to discrimination and retaliation for protected activity and the need for training.

185.    Defendants failed and/or refused to provide adequately training and supervision to its agents, staff, and servants in the lawful execution of their duties and this failure to train and supervise became the unconstitutional policy of MAWSS.

186.    Defendants knew and/or should have known of the importance in obtaining and providing training to it's employees and managers and of the risk associated with its failure to provide it employees and managers with such training.

187.    Defendants failure to properly train and supervise amounted to a deliberate indifference to the Constitutional rights of the plaintiff.

188.    In their actions towards Plaintiff as described above, Defendants King and Washington acted willfully, intentionally, and/or with callous or reckless indifference to Plaintiff's rights under the First Amendment to the United Stated Constitution.

189.    Reasonable public officials knew or should have known that their actions violated

clearly established law.

190.    As a result of Defendant's adverse acts against Plaintiff in retaliation for his exercise of his rights to free speech, Plaintiff has suffered loss of income, loss of promotional opportunities, loss of training, severe humiliation, mental distress, and emotional suffering.

191.    Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce his rights and is required to pay his attorneys reasonable attorneys' fees for the services rendered in this cause.

## COUNT IX - Negligent Supervision and Training
## State Law Claims

Plaintiff asserts this claim against Defendant MAWSS.

192.    Plaintiff reavers and realleges the foregoing paragraphs as if fully set forth herein.

193.    Defendants were aware of the harmful acts by Defendants King and Washington and resulted in unlawful and retaliatory behavior. Despite that knowledge, Defendant, MAWSS countenanced the conduct of Defendants King and Washington.

194.    Defendants had at all times material hereto had a duty to enforce laws, rules and regulations that prevent retaliation and discrimination in the workplace as described herein. Defendants breached this duty by allowing its agents and servants, including, but not limited to Defendants King and Washington, to act in the aforementioned manner toward Plaintiff.

195.    The breach of duty created by Defendant MAWSS' inaction caused Plaintiff injury, humiliation, and other damages.  Defendants consciously and/or recklessly disregarded the known risks and dangers to the Plaintiff caused by the retaliation and discrimination to Plaintiff in the workplace.

28

196.    Defendants have negligently and/or wantonly supervised and/or retained their supervisors responsible for the workplace.

197.    Defendants, by themselves and through their agents, employees, officials and supervisors knew or should have known of the harmful and offensive propensities of Defendants Washington and King. Defendants have assumed responsibility for Defendants King and Washington's conduct and ratified their wrongful conduct toward the Plaintiff.

198.    As a proximate consequence of Defendants' actions, Plaintiff was caused to suffer damages as enumerated herein.

### COUNT X -  Invasion of Privacy State Law

Plaintiff asserts this claim against Defendants, MAWSS, King, in her individual and official capacities as the Human Resource Director,  and Washington, in her individual and official capacity as the Assistant Human Resource Officer.

199.     Plaintiff reavers and realleges the foregoing paragraphs as though fully set forth herein.

200.    Defendants made unlawful inquiries regarding Plaintiff's medical history and treatment and made personnel decisions absent any medically objective evidence.

201.    Defendants King and Washington were not qualified to make medical judgements regarding Plaintiff's medical condition and/or to impose restrictions upon Plaintiff.

202.    Defendants imposed medical restrictions prohibiting Plaintiff from driving and/or operating machinery contrary to medical information and releases provided to Defendants.

203.    Defendants reassigned Plaintiff's duties based upon their personal biases and prejudices related to Plaintiff's medical condition.

204.    Defendants actions placed Plaintiff in a false light regarding his employment status and detrimentally affected the terms and conditions of his relationship with co-workers and his reputation in the community.

205.    Plaintiff alleges Defendants, by and through Defendants King and Washington, intentionally and wrongfully intruded into Plaintiff's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to plaintiff, who is a person of ordinary sensibilities.

206.    The actions of Defendants described above constituted an invasion upon the Plaintiff's emotional sanctum and did so in violation of ordinary decency, imposing emotional distress upon Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully pray that this Court assume jurisdiction of this action and after trial:

A.    Grant Plaintiffs a declaratory judgment that the actions, policies and practices complained of herein of the defendants violate Plaintiff's federally protected rights as set forth herein.

B.    Grant Plaintiff a preliminary injunction enjoining the defendants, their agents, successors, employees and attorneys and those acting in concert with them and at their direction, from maintaining or continuing the policies, practices, customs and usages of denying, abridging, withholding, conditioning, limiting, or otherwise interfering with the Plaintiffs' rights as set forth herein.

C.    Grant Plaintiff an order enjoining the defendants, their agents, successors, employees, and attorneys and those acting in concert with them and at their discretion, from

engaging in practices that discriminate against Plaintiff and enjoining defendants from failing and refusing to immediately restore Plaintiffs' employment status and classification.

       D.     Grant Plaintiff an award of back pay from Defendant Mobile Area Water and Sewage System in the amount Plaintiff would have earned but for those policies and practices complained herein.

       E.     Grant Plaintiff front pay or wages in the amount equal to the pay or wages he would be earning after final judgment, but for Defendants' unlawful policies and practices complained of herein, and but for the delays Plaintiff will encounter in reaching his rightful place because of business necessity and other equitable considerations.

       F.     Award compensatory damages against all defendants in an amount the jury determines will compensate the Plaintiff for his losses and damages and/or nominal damages as may be appropriate.

       G.     Award punitive damages against Defendants King and Washington in an amount the jury determines for the appropriate intentional and wrongful acts complained of herein sufficient to prevent further discrimination and/or retaliation against Plaintiff or others similarly situated.

       H.     Award Plaintiffs' costs and expenses in prosecuting this action including an award of reasonable attorneys' fees.

       I.     Retain jurisdiction of this action following judgment for sufficient time to insure that Defendants comply with the law and decree which may be entered herein, and during such time to require Defendants to report such information as is necessary to evaluate their compliance.

31

J.      Grant Plaintiffs such other and further relief as equity and justice requires.

**PLAINTIFFS  REQUEST A TRIAL BY JURY.**

Respectfully submitted this 20th day of September,  2018.

*/s/ Mary E.  Pilcher*
**Mary E. Pilcher, Esq.(PILCM2436)**
Stein & Pilcher, LLC
151 North Bancroft Street
P.O. Box 602
Fairhope, AL 36533
(251) 210-4557

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing document upon the following

counsel of record via CM/ECF electronic transmission and/or by placing same in the U.S. Mail,

postage prepaid this the 23rd  day of July, 2018.

K. Paul Carbo, Jr.
The Atchison Firm, P.C.
3030 Knollwood Drive
Mobile, AL 36693

/s/Mary E. Pilcher
**Mary E. Pilcher (PILCM2436)**