IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KYLE BOSARGE, | : |
| Plaintiff, | : |
| vs. | : CIVIL ACTION NO. 1:18-cv-240-TFM-N |
| MOBILE AREA WATER & SEWER SERVICE, *et al.*, | : |
| Defendants. | : |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is *Defendants' Supplemental Brief in Support of Its Motion for Summary Judgment*. Doc. 138, filed June 6, 2022. Defendants Mobile Area Water & Sewer Service, Sharon King, and Fatima Washington move the Court grant summary judgment in its favor and against Plaintiff Kyle Bosarge for his claim of retaliatory hostile work environment, Count 3 of his amended complaint. *Id.* Having considered the motion, brief in opposition, response to the brief in opposition, and relevant law, the Court finds the renewed motion for summary judgment (Doc. 138) is due to be **GRANTED**.

### I.    PARTIES AND JURISDICTION

For the purposes of this memorandum opinion and order, the Court will refer to Plaintiff Kyle Bosarge as "Plaintiff;" Defendant Board of Water and Sewer Commissioners of the City of Mobile as "the Board;"[1] Defendant Sharon King as "King;" Defendant Fatima Washington as "Washington;" and Defendants the Board, King, and Washington collectively as "Defendants."

---

[1] The Board states it is misidentified by Plaintiff as the "Mobile Area Water and Sewer Service." Doc. 89 at 1. As stated, the Court will refer to the defendant that Plaintiff identifies as the "Mobile Area Water and Sewer Service" as "the Board."

The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(4), and 42 U.S.C. § 1983.

The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

In the Court's May 29, 2020 Memorandum Opinion and Order, the procedural and factual background in this matter was detailed but the Court will update the procedural background.

### A.     Procedural Background

On May 29, 2020, the Court entered its Memorandum Opinion and Order in which the following was ordered: (1) Defendants' Motion to Strike Affidavit of Kyle Bosarge was sustained as to their objection to paragraph nineteen of Plaintiff's affidavit insofar as he states Sumrall said he would get the letter to HR, he saw Sumrall place the letter in the inbox, and Sumrall indicated to Plaintiff he delivered the envelope to HR, and overruled Defendants' remaining objections to Plaintiff's affidavit; (2) Plaintiff's Motion to Strike Deposition Testimony of Dr. Terry Millette was overruled; and (3) Defendants' Motion for Summary Judgment and Supporting Brief was granted and Plaintiff's claims against Defendants were dismissed with prejudice.  Docs. 89, 106, 108, 118.  On the same date, in accordance with the Memorandum Opinion and Order, the Court entered judgment pursuant to Fed. R. Civ. P. 58.  Doc. 119.

On June 12, 2020, Plaintiff filed a Motion for Reconsideration / Alternative Motion for Relief of Judgment in which he requested the Court, pursuant to Fed. R. Civ. P. 59 and 60(b), reconsider its Memorandum Opinion and Order and Judgment for Defendants' Motion for Summary Judgment and Supporting Brief.  Doc. 120.  Defendants timely responded and Plaintiff filed a reply.  Docs. 122, 125.  The Court denied Plaintiff's motion for reconsideration.  Doc. 126.

On November 16, 2020, Plaintiff timely filed his Notice of Appeal. Doc. 127. On January 24, 2022, the Eleventh Circuit issued its opinion in which it affirmed this Court's ruling as to Plaintiff's Americans with Disabilities Act ("ADA") discrimination claim, retaliation claims, and claims against King and Washington in their individual capacities. Doc. 132 at 38. The Eleventh Circuit remanded Plaintiff's retaliatory-hostile-work-environment claim for this Court to consider it under the standard that was applied in *Monaghan v. World-pay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020). *Id.* The Eleventh Circuit's mandate was issued on April 1, 2022.

On April 21, 2022, the Court ordered the parties to file any supplemental briefing in regard to Plaintiff's retaliatory-hostile-work-environment claim and in accord with the Eleventh Circuit's opinion. Doc. 136. Defendants timely filed their instant renewed motion for summary judgment, Plaintiff filed his brief in opposition, and Defendant filed its response to the brief in opposition. Docs. 137, 138, 139. The renewed motion for summary judgment is fully briefed and ripe for review, and the Court finds oral argument unnecessary.

### III.    STANDARD OF REVIEW

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a), (b). Summary judgment is appropriate when the moving party establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also*

*Ritchey v. S. Nuclear Operating Co.,* 423 F. App'x 955 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510).[2] At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. Only disputes about the material facts will preclude the granting of summary judgment. *Id.*

The movant bears the initial burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Fed. R. Civ. P. 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Moore ex rel. Moore v.*

---

[2] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

*Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510). The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Id*. (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."). However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356 (citations omitted). Conclusory assertions, unsupported by specific facts, that are presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511 (emphasis in original) (citations omitted). In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing that is sufficient to establish the existence of an element that is essential to that party's case. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

## IV.   DISCUSSION AND ANALYSIS

In Count 3 of Plaintiff's amended complaint, he brings a retaliatory-hostile-work-environment claim pursuant to the ADA and § 504 of the Rehabilitation Act against the Board, and King and Washington in their official capacities. Doc. 33 at 20-22. Plaintiff claims he was subjected to a retaliatory, hostile, offensive, and abusive working environment because of his complaints of discrimination and Defendants knew of the hostile work environment. *Id.* ¶¶ 137-

46. In the Court's May 29, 2020 Memorandum Opinion and Order, it granted summary judgment as to all of Plaintiff's ADA claims that were brought against King and Washington in their official capacities because those claims were redundant and the Eleventh Circuit affirmed that decision. Doc. 118 at 26; Doc. 132 at 38. Therefore, Count 3 remains against the remaining defendant, the Board.

In the Eleventh Circuit's opinion, it states:

> This Court has not specifically held that a retaliatory hostile work environment claim is cognizable under the ADA, but it has held that such a claim is available under Title VII. *See Monaghan* [ ], 955 F.3d [at] 860 [ ]. The anti-retaliation provisions of the ADA and Title VII are nearly identical. *Compare* 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA].") and 42 U.S.C. § 2000e-3(a) (making it unlawful for an employer "to discriminate against" an individual because such individual "has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."). Thus, we assume that Plaintiff's retaliatory hostile work environment claim is cognizable under the ADA, and that the same standard applies to that claim as would apply to a similar claim under Title VII.

*Bosarge v. Mobile Area Water & Sewer Serv.*, No. 20-14298, 2022 U.S. App. LEXIS 2046, at *43-44, 2022 WL 203020, at *13 (11th Cir. Jan. 24, 2022).[3]

"To make a *prima facie* showing of retaliation, the plaintiff must show: (1) that she engaged in statutorily protected conduct; (2) that she suffered adverse employment action; and (3) that there is "some causal relation" between the two events." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1268 (11th Cir. 2010) (citing *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008)). As to what a plaintiff must show to prove a hostile-work-environment claim under Title VII, the

---

[3] The Court uses the official citation for the Eleventh Circuit opinion, but also notes it is Doc. 132 on the docket sheet.

Eleventh Circuit stated in its opinion:

> Until recently, this Court has applied the "severe or pervasive" standard to a Title VII retaliatory hostile work environment claim, requiring a plaintiff asserting such a claim to show that he experienced harassment on account of his protected conduct that was "sufficiently severe or pervasive to alter the terms and conditions" of his employment. *See Gowski v. Peake*, 682 F.3d 1299 (11th Cir. 2012). In *Monaghan*, the Court rejected the standard formerly applied in *Gowski*, and held that a plaintiff can prevail on a retaliatory hostile work environment claim under Title VII by showing, in addition to the other elements required to establish a retaliation claim, that the alleged retaliatory conduct "well might have dissuaded a reasonable worker from making or supporting a charge or discrimination" under Title VII. *Monaghan*, 955 F.3d at 857 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) (quotation marking omitted and alterations adopted)).

*Bosarge*, 2022 U.S. App. LEXIS 2046, at *44, 2022 WL 203020, at *13.

In *Monaghan*, the Eleventh Circuit reaffirmed the standard applicable to all Title VII retaliation claims is the *Burlington Northern* "well might have dissuaded" standard. 955 F.3d at 862. The Supreme Court described the "well might have dissuaded" standard and the level of seriousness to which a harm must rise before it becomes actionable retaliation:

> [A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Rochon* [*v. Gonzales*], 438 F.3d [1211,] 1219 [(D.C. Cir. 2006)] (quoting *Washington* [*v. Ill. Dep't of Rev.*], 420 F.3d [658,] 662 [(7th Cir. 2005)]).
>
> We speak of *material* adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998); *see Faragher* [*v. City of Boca Raton*], 524 U.S. [775,] 788, 118 S. Ct. 2275, 141 L Ed 2d 662 [(1998)] (judicial standards for sexual harassment must "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing'"). An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. *See* 1 B. LINDEMANN & P. GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 669 (3d. ed. 1996) (noting that "courts have held that personality conflicts at work that generate antipathy" and "'snubbing' by supervisors and co-workers" are not actionable under § 704(a)). The antiretaliation

> provision seeks to prevent employer interference with "unfettered access" to Title VII's remedial mechanisms. *Robinson* [*v. Shell Oil Co.*], 519 U.S. [337,] 346, 117 S. Ct. 843, 136 L. Ed. 2d 808 [(1997)]. It does so by prohibiting employer actions that are likely "to deter victims of discrimination from complaining to the EEOC," the courts, and their employers. *Ibid*. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence. *See* 2 EEOC 1998 MANUAL § 8, p 8-13.

*Burlington Northern*, 548 U.S. at 68, 126 S. Ct. at 2415.

The Board argues Plaintiff has not presented conduct that would dissuade a reasonable employee from engaging in protected conduct. Doc. 138 at 3. Plaintiff identifies a number of alleged retaliatory acts against him for his July and August 2016 complaint of discrimination: (1) he was restricted from his ability to drive and operate equipment; (2) overtime opportunities were removed in August 2016; (3) the Board initiated a targeted investigation of him in December 2016; (4) in January 2017, he was noticed with discipline at the recommendation of Washington, disciplinary proceedings were held, and ultimately he was suspended for fifteen days; (5) he was reassigned to the small engine room and his duties were limited to small engine work; and (6) he received a poor evaluation and denied a merit raise that he historically received. Doc. 137 at 14-15.

The Court addressed and found reasonable all of the purported retaliatory acts that Plaintiff now presents, and the Eleventh Circuit affirmed those findings. However, the Court will address each alleged retaliatory act in this new post-*Monaghan* review.

As to whether the City retaliated against Plaintiff when he was restricted from his ability to drive and operate equipment, the Court found in its May 29, 2020 Memorandum Opinion and Order Plaintiff's driving restrictions were reasonable because they were based on the Family and Medical Leave Act ("FMLA") medical form that was completed on June 17, 2016, by Dr. Millette and Dr. Millette's October 20, 2016 letter that stated Plaintiff had no restrictions from his job

duties or driving was not delivered to MAWSS Human Resources. Doc. 118 at 30-32. Under this new review, the Court's finding has not changed and this fails to constitute a retaliatory act.

As to whether the City retaliated against Plaintiff when his overtime opportunities were removed in August 2016, he was prohibited from being on the standby list due to his driving and operating restrictions, which the Court found were reasonable. *Id.* at 6, 30-32. Under this new review, the Court's finding has not changed.

> The Eleventh Circuit found Plaintiff's driving restrictions reasonable:
>
> It is further undisputed that Washington and King reasonably concluded, based on the updated FMLA form Dr. Millette submitted in June 2016, that allowing Plaintiff to drive MAWSS vehicles while at work would pose a direct threat to Plaintiff's own safety and to the safety of other individuals in the workplace. In pertinent part, and as set out above, the June 2016 FMLA form indicated that Plaintiff's MS: (1) was a permanent condition, (2) that episodically caused symptoms including loss of vision, fatigue, and extremity weakness with spasticity, (3) with episodes occurring every three to six weeks and lasting three to five days per episode. Defendants advised Plaintiff in August 2016 that his symptoms-particularly his symptoms of loss of vision, dizziness, fatigue, and extremity weakness with spasticity-presented "a safety hazard when operating MAWSS vehicles and equipment."
>
> Plaintiff argues that Washington and King's assessment that he was unable to drive was based on their assumptions about his MS diagnosis rather than objective medical evidence. But as just described, Washington and King determined that it would be hazardous to allow Plaintiff to continue driving MAWSS vehicles and equipment based on Dr. Millette's description of Plaintiff's symptoms-in particular, loss of vision, dizziness, and extremity weakness with spasticity-rather than on Plaintiff's MS diagnosis. Dr. Millette's description of Plaintiff's symptoms was the "best . . . objective evidence" of Plaintiff's symptoms and their frequency available to Washington and King at the relevant time. *See* 29 C.F.R. § 1630.2(r).

*Bosarge*, 2022 U.S. App. LEXIS 2046, at *24-25, 2022 WL 203020, at *8. This also fails to constitute a retaliatory act.

As to whether the City retaliated against Plaintiff when the Board initiated a targeted investigation of him in December 2016, the investigation was prompted by Charles Sumrall when

he reported to HR a theft incident that he observed at his department. Doc. 107 at 6-7; *see also* Doc. 97-57 at 82-85. As a result, King contacted an investigation firm on December 1, 2016, to review video-surveillance footage for incidents of theft, the result of which was the investigation firm observed the theft incident that was reported by Sumrall. Docs. 97-17 at 2-4, 97-58 at 74-75. Under this new review, the Court's finding as to the reasonableness of the investigation has not changed. Consequently, it fails to constitute retaliation.

As to whether the City retaliated against Plaintiff when, in January 2017, he was noticed with discipline at the recommendation of Washington, disciplinary proceedings were held, and ultimately, he was suspended for fifteen days as the consequence of the aforementioned investigation. Docs. 90-10 at 10-16, 97-18, 97-19. Under this new review, the Court's finding as to the reasonableness of the disciplinary proceedings and suspension has not changed and the retaliation claim on which this is based also fails.

As to whether the City retaliated against Plaintiff when he received a poor evaluation and denied a merit raise that he historically received, such were the consequences of the theft investigation, predisciplinary hearing, and appeal. Docs. 90-10 at 10-16, 97-18, 97-19. Under this new review, the Court's finding as to the reasonableness of the poor evaluation and denial of a merit raise has not changed. Therefore, this fails as retaliation.

The Eleventh Circuit found Plaintiff did not present evidence from which a jury could reasonably conclude he was selectively targeted for discipline or disciplined unfairly in retaliation for his complaint about disability discrimination:

> As to Plaintiff's February 2017 suspension-as well as the October 2017 unsatisfactory service rating and loss of merit raise that followed automatically from the suspension-it is undisputed that the suspension was imposed by a three-person hearing panel at the conclusion of Plaintiff's disciplinary hearing conducted on February 9, 2017. The panel was aware that Plaintiff had complained internally about disability discrimination because Plaintiff testified to that fact during the

> hearing. However, there is no evidence that Plaintiff's prior internal complaints about discrimination influenced the panel's decision as to the appropriate discipline to impose on Plaintiff. On the contrary, all the evidence in the record indicates that the hearing panel decided that a fifteen-day suspension was warranted based on evidence presented at the hearing-including video surveillance footage and Plaintiff's own testimony-showing that Plaintiff violated Personnel Board rules by completing a personal vehicle repair on MAWSS time and using MAWSS materials and that he aided and abetted theft of MAWSS inventory when he stood by while his co-worker tried to conceal and then stole a pair of windshield wipers that Plaintiff had previously pulled from the garage without noting their removal in the MAWSS inventory system.
>
> Plaintiff claims he was selectively targeted for discipline, but he does not present any evidence to support that claim. It is undisputed that the other parties involved in the incidents for which Plaintiff was discipline-Rollo and Turner-were themselves disciplined: Turner was forced to retire, and Rollo was suspended. Plaintiff also points out that his co-worker Jason Simon was in the MAWSS garage when Turner stole the windshield wipers, but there is no evidence that Simon pulled the windshield wipers from MAWSS's inventory without noting their removal and then stood idly by while Turner blatantly tried to conceal and subsequently stole the wipers in Simon's presence. Finally, Plaintiff notes that MAWSS garage employees had a custom and practice of performing minor personal repairs and that Sumrall had engaged in this practice himself. Assuming that is true, it does not account for the fact that Plaintiff was disciplined for both performing a personal repair and aiding and abetting a co-worker's theft. Moreover, there is no evidence that any HR employees-including Washington and King, who initiated Plaintiff's discipline-were aware of the personal repair practice in the MAWSS garage, which Plaintiff does not deny violated Personnel Board rules.

*Bosarge*, 2022 U.S. App. LEXIS 2046, at *41-42, 2022 WL 203020, at *12. Therefore, this fails to constitute retaliation.

As to whether the City retaliated against Plaintiff when he was reassigned to the small engine room and his duties were limited to small engine work, Plaintiff testified at his deposition he was in the small-engine area since 2015, when the shop was moved. Doc. 90-3 at 36. Further, Sumrall testified Plaintiff did not have "specific duties" and performed "general duties or no assignments," and Adam Lynn testified Plaintiff was not the only MAWSS employee who performed small-engine repairs, but he was "good at it" and his "name would come up first" for small-engine repairs. Doc. 90-6 at 4-5, 90-8 at 6-7. Sumrall also testified he assigned Plaintiff to

the small-engine area because of Plaintiff's "illness and the fumes and stuff" and Sumrall "felt better for [Plaintiff] to be in a more comfortable zone than being up into an open area," which Sumrall stated was not an assignment. Doc. 90-6 at 6-7. Under this new review, the Court's finding that, as viewed by a reasonable person in the circumstances, Plaintiff did not show a serious and material change in the terms, conditions, or privileges of his position as an Auto Service Worker has not changed. Therefore, the retaliation claim fails.

The Eleventh Circuit found Plaintiff's small-engine repair assignments did not alter the "terms, conditions, and privileges" of his employment:

> The undisputed evidence shows that small-engine repair was part of the routine work of the MAWSS garage that was shared among various ASW II employees and distributed as dictated by the needs of the garage. To that end, multiple MAWSS garage supervisors testified that Plaintiff was not the only MAWSS employee who did small-engine work, but that his "name would come up first" for that type of work because he was "good at it." Plaintiff did not present any evidence to rebut this testimony. On the contrary, Plaintiff confirmed in his deposition testimony that he had worked in the small-engine area since 2015, prior to the time he submitted his FMLA paperwork advising Defendants of his MS diagnosis.
>
> Sumrall did suggest in his testimony that he tended to direct small-engine assignments to Plaintiff as an informal accommodation for his illness, because those assignments allowed Plaintiff to work away from fumes. But even assuming Plaintiff received more small-engine assignments because of his illness, Plaintiff does not cite any evidence to support his argument that the assignments were adverse in any way. The ADA defines discrimination in terms that relate to "the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employee." *See* 42 U.S.C. § 12112(a). There is no evidence that Plaintiff's small-engine assignments had any effect on the "terms, conditions, and privileges" of his employment in the ASW II position. It is undisputed that small-engine work did not result in less pay, a less desirable schedule, diminished work responsibilities, or reduced opportunities for advancement.

*Bosarge*, 2022 U.S. App. LEXIS 2046, at *29-30, 2022 WL 203020, at *9. Even framed as retaliation, Plaintiff's claim fails.

Ultimately, the instances of retaliation to which Plaintiff cites were either the result of his

medical condition that was reported in his FMLA medical form or a consequence of his theft investigation. As to the theft investigation, the mere fact that Plaintiff raised the specter of discrimination during the course of the disciplinary proceedings does not mean his employer could not discipline him for his misdeeds.

The Court finds Plaintiff has not carried his burden to present conduct that would dissuade a reasonable employee from engaging in protected conduct because, as this Court found and the Eleventh Circuit affirmed, the actions that were taken by the Board were reasonable. Further, to the extent Plaintiff seeks to revive previously decided claims that were affirmed by the Eleventh Circuit by simply "restating" them as retaliation, they also fail as retaliation as a matter of law. Accordingly, Defendants' renewed motion for summary judgment as to Plaintiff's retaliatory-hostile-work-environment claim (Count 3) is granted.

## V. CONCLUSION

Based on the foregoing, Defendants' Supplemental Brief in Support of Its Motion for Summary Judgment (Doc. 138) is **GRANTED** and Count 3 of Plaintiff's amended complaint is **DISMISSED with prejudice**.

A separate judgment that is consistent with this memorandum opinion and order will be entered pursuant to Fed. R. Civ. P. 58(a).

**DONE** and **ORDERED** this the 23rd day of November 2022.

                                    /s/Terry F. Moorer
                                    TERRY F. MOORER
                                    UNITED STATES DISTRICT JUDGE